## COMMISSIONER OF INTERNAL REVENUE v. KELLOGG et al.

### No. 9659.

Circuit Court of Appeals, Ninth Circuit.

April 19, 1941.

116

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Warren F. Wattles, and L. W. Post, Sp. Assts. to the Atty. Gen., for petitioner.

Vernon M. Brydolf, of Pasadena, Cal., for respondents.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

The Commissioner seeks a review of a redetermination by the Board of Tax Appeals of a deficiency determined by him of the tax due on income of F. W. Kellogg,[1] hereafter called taxpayer, for the tax year 1935.

Taxpayer's petition to the Board for the redetermination of the deficiency was in the usual form setting forth the deficiency letter of the Commissioner and his exceptions to the Commissioner's determination. It admits that there was income taxable to the amount of $6,846.31, but complains that a deficiency assessment of an additional $5,776.89 was erroneously made. Taxpayer complained that this deficiency was due to a finding by the Commissioner over-valuing the cancellation of an obligation of the taxpayer to pay, at his death, to the Kellogg Investment Company, a corpora-

tion, without interest, the sum of $43,-533.60, the amount of premiums on a policy insuring taxpayer's life which the corporation had paid. It is not claimed that there is fraud or collusion or want of consideration for the absence of interest on the premiums advanced. On the contrary, it appears that a part of the consideration was the assumption by taxpayer of a $20,-000 obligation of another debtor of the corporation.

The taxpayer was 69 years of age and had a normal life expectancy of 8.97 years. In his return he gave as income for the cancellation of the future obligation to pay the amount of the premiums the sum of $26,426.90. It is not disputed that this is the present worth of the amount payable at taxpayer's death, if discounted at 6 per cent. per annum. The Commissioner found the value of the cancelled obligation was the full future obligation of $43,533.60 and denies here that the value of the present cancellation was in any way lessened because the amount was not payable by taxpayer until nearly nine years later and then without interest.

The Board determined that the Commissioner erred in finding that the value of the indebtedness payable at taxpayer's death was its valuation at the time the obligation was cancelled by the corporation, and re-determined the tax on the basis of the $26,-426.90 gain returned by the taxpayer,— that is, it found no deficiency.

The cancellation of the indebtedness was a part of a final liquidating dividend of the corporation, taxpayer taking it in lieu of other property. The applicable sections of the 1934 Revenue Act in determining a gain or loss from the exchange of his stock in a liquidation of all the assets of a corporation are:

"§ 115.  Distributions by Corporations
    *      *      *      *      *

"(c)  *Distributions in Liquidation.* Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee result-ing from such exchange shall be deter-mined under section 111, but shall be recog-nized only to the extent provided in section

[1] Pending the review F. W. Kellogg died and Florence Scripps Kellogg, William Scripps Kellogg and Walter J. Schneider, as executors of his will, were substituted as respondents.

112. Despite the provisions of section 117(a), 100 per centum of the gain so recognized shall be taken into account in computing net income. * * *" 26 U.S.C.A. Int.Rev.Acts, page 703.

"§ 111. Determination of Amount of, and Recognition of, Gain or Loss

\* \* \* \* \*

"(b) *Amount Realized.* The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received." 26 U.S.C.A. Int.Rev.Acts, pages 692.

■■ The claim against taxpayer for a future noninterest-bearing debt was property, not money, in the hands of the corporation. It certainly would not have been regarded as money if sold to a third party or distributed in liquidation to other stockholders. If the taxpayer, instead of having it cancelled in liquidation, had procured another to assume the obligation, in determining his charge the party assuming it would have calculated the amount of money, less than the principal, which at some rate of cumulating interest would produce the principal sum at the taxpayer's death. The cancellation of such a chose in action is, in effect, a distribution to taxpayer of "property" in the hands of the corporation. We are unable to see how it can be regarded as a liquidating dividend of "money" to the taxpayer. Warren Service Corp. v. Commissioner, 2 Cir., 110 F.2d 723, 725, holding: "The sum received in 1926 as security for the lessee's performance was, by specific agreement, available for the lessor's general use and was not to bear interest. The value of a release of an obligation to pay $125,000 in 1941, without interest, is obviously less than the value of the release of a debt for like amount presently due, or of an obligation to pay the sum in 1941 with interest. See Chesapeake & Ohio R. Co. v. Kelly, 241 U.S. 485, 489, 36 S.Ct. 630, 632, 60 L.Ed. 1117, L.R.A. 1917F, 367, where it is said: 'It is self-evident that a given sum of money in hand is worth more than the like sum of money payable in the future.' See also Hollwedel v. Duffy, Mott Co., 263 N.Y. 95, 188 N.E. 266, 90 A.L.R. 1312. The present case is to be * * * differentiated from a situation where the lessor is to pay the lessee interest on the deposited sum, as in the case relied upon by the Board. Commissioner v. Langwell Real Estate Corp., 7 Cir., 47 F.2d 841. In such a case the present worth of a release from an obligation to pay $125,000 in eight years is presumably the face amount of the obligation; the value to the lessor of the use of the money in the interim is offset by the obligation to pay interest during the same period. But in the case at bar the lessor was to have the free use of the money until 1941. So the value of the release received in 1933 was the present worth of $125,000 payable in 1941."

We regard the Commissioner's determination to be "without rational foundation and excessive."[2] See infra, Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 290, 79 L.Ed. 623.

The cases cited by the Commissioner,— United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131, and Helvering v. American Chicle Co., 291 U.S. 426, 54 S.Ct. 460, 78 L.Ed. 891, are not relevant because not construing these sections treating of money and property received by a stockholder on liquidation or dissolution of a corporation. Also the question there considered was whether a corporation made any gain where it bought in the open market its own bonds at less than par. It was not questioned that the

[2] The Commissioner cites Treasury Regulations 86: "Art. 22(a)-14 (as amended by T.D. 4871, 1938-2 Cum.Bull. 130, 133). Cancellation of indebtedness. —(a) In general.—The cancellation of indebtedness, in whole or in part, may result in the realization of income. If, for example, an individual performs services for a creditor, who in consideration thereof cancels the debt, income in the amount of the debt is realized by the debtor as compensation for his services. A taxpayer realizes income by the payment or purchase of his obligations at less than their face value. (See article 22(a)-18). If a share holder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation.

\* \* \* \* \* \*

Assuming this regulation to be applicable, it is not here questioned that the taxpayer had "a realization of income." The question here is "How much is the realization?" We construe the "debt" referred to in the second sentence as a debt then due. Otherwise we would have the absurdity of the cancellation of a noninterest-bearing money obligation payable thirty years hence as realizing as much for the taxpayer as if it were past due on the date of cancellation.

amount of gain, if any, was that claimed by the Commissioner. It does not appear that they were noninterest-bearing bonds and hence the gain would be less than if interest bearing. On the contrary, they were bonds issued by manufacturing corporations and, since traded in large values in the open market, undoubtedly bore interest, which make the purchase at less than face value "presumably" a gain to the corporation. Warren Service Corp. v. Commissioner, supra, 110 F.2d 725.

■ The case was heard by the Board on an agreed statement of certain facts. The statement does not contain any facts showing at what rate the obligation to pay the $43,533.60 at the taxpayer's death should be discounted. The Board apparently was under the impression that if the Commissioner erred in finding the full amount of the future obligation was its value at its earlier cancellation, it should take 6 per cent., the rate of discount used by taxpayer in determining the amount in his return of income. This also happened to be the rate of interest on certain notes given by the taxpayer to the corporation which were also cancelled at the same time. However, this is not the basis for the determination of the discount on the taxpayer's obligation. The obligation was secured by a transfer of the policies themselves which also secured other indebtedness of the taxpayer. A purchaser of the indebtedness would be concerned with the taxpayer's financial responsibility and with the going rate of similar discounts.

Since it does not appear that the stipulated facts are all the facts which may be considered by the Board, we remand the case to the Board for the purpose of receiving further evidence from the taxpayer and the Commissioner, if such be offered, concerning the rate at which the obligation of the taxpayer should be computed and, if such evidence be offered, redetermine the deficiency, if any. Cf. Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623, where the evidence showed the Commissioner's determination of an apportionment of a tax between different interests to be arbitrary and excessive, but the taxpayer's did not show the exact amount of the tax due. The Supreme Court held that the Board erred in fixing the rate at the arbitrary and excessive amount assessed by the Commissioner and that in such a situation it should be open to an application for a hearing of evidence "to show whether a fair apportionment might be made and, if so, the correct amount of tax." 293 U.S. page 516, 55 S. Ct. page 291, 79 L.Ed. 623.

The decision of the Board of Tax Appeals is reversed and the case remanded for further proceedings in accordance with this opinion.