**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James David KIMMEL,**
**Defendant-Appellant.**

No. 80-1562.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 12, 1981.

Decided March 4, 1982.

As Amended March 29 and April 5, 1982.

On Return to Remand July 22, 1982.

---

Gordon M. Bronson, Honolulu, Hawaii, for defendant-appellant.

Stephen D. Tom, Asst. U. S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before SKELTON,[*] Senior Judge, CHOY and REINHARDT, Circuit Judges.

CHOY, Circuit Judge:

James David Kimmel appeals his convictions for distributing and conspiring to distribute LSD in violation of 21 U.S.C. §§ 841(a)(1) and 846. We reach only two issues at this stage of the appeal. First, we hold that Kimmel did not receive the benefits of his constitutional right to legal representation at his trial. Second, we hold that the record does not show that he made a knowing and intelligent waiver of his right to counsel. Because the district court may be able to supply additional information about Kimmel's understanding at the time of the waiver, we remand to allow the district court to supplement the record.

## I. The Need for a Waiver

A court-appointed advisor assisted Kimmel in his *pro se* defense. The role of an advisor is to "merely advise or to give the accused meaningful technical assistance in presentation of the defense and the saving of the record for appeal." *United States v. Coupez*, 603 F.2d 1347, 1351 (9th Cir. 1979). Attorney Gordon Bronson, the advisor in this case, performed more than these traditional functions. In addition to counseling Kimmel on technical points, he actively argued before the district court and, by the end of the proceedings, emerged as the dominant spokesman for the defense. He did not, however, assume all the duties of a full-fledged counsel. For example, Kimmel formulated and presented his major defense that the United States courts have no jurisdiction over him because he is a citizen of the sovereign nation of Hawaii.

■ The district court has the authority to allow, if the accused desires, a hybrid form of representation in which the accused assumes some of the lawyer's functions as Kimmel did. *See, e.g., United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981). Although we question the efficiency of hybrid arrangements, the district court suffers the major inconvenience and can usually best weigh the costs and benefits.

■ The Government argues that when the accused and his lawyer join forces to manage and present the defense, the accused receives all the benefits of representation by a lawyer and, consequently, there is no need for a waiver of counsel. We disagree. When the accused assumes functions that are at the core of the lawyer's traditional role, as Kimmel did, he will often undermine his own defense. Because he has a constitutional right to have his lawyer perform core functions, he must knowingly and intelligently waive that right. This holding is a logical extension of the well-established rule that a waiver is required despite the presence of a court-appointed advisor. *See, e.g., United States v. Dujanovic*, 486 F.2d 182 (9th Cir. 1973).

## II. The Adequacy of the Waiver

■ A waiver of counsel cannot be knowing and intelligent unless the accused appreciates the possible consequences of mishandling these core functions and the lawyer's superior ability to perform them. Our task is to determine from the record whether the accused understood these risks when he elected to represent himself. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525,

---

[*] The Honorable Byron G. Skelton, Senior Judge, United States Court of Claims, sitting by designation.

2541, 45 L.Ed.2d 562 (1975). We prefer trial courts to simplify our review by explaining the risks of self-representation to the accused. However, because the test concerns what the accused understood rather than what the court said or understood, explanations are not required. *See, e.g., Cooley v. United States,* 501 F.2d 1249, 1252 (9th Cir. 1974), *cert. denied,* 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975).

The district court did not explain on the record the risks of self-representation to Kimmel. In the absence of a specific waiver inquiry, we must consult "the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *Id.* at 1252. The record reveals that Kimmel was well-educated and literate. He also had been prosecuted several times before and, in at least one case, had represented himself without the assistance of an attorney. While this background information suggests that Kimmel appreciated the risks of self-representation, we need more details to conclude that he sufficiently understood them. For example, it would be helpful to know whether Kimmel was informed about these risks when he represented himself previously. The existing record does not supply these details or other evidence that adequately supports a finding of an intelligent waiver.

■ When the record suggests that there is additional evidence available about the adequacy of a waiver, we may allow the trial court to supplement the record. *Rhinehart v. Gunn,* 661 F.2d 738, 739-40 (9th Cir. 1981) (concerning a state prisoner's petition for habeas corpus); *Davis v. Morris,* 657 F.2d 1104, 1106 (9th Cir. 1981) (same). In *United States v. Tompkins,* 623 F.2d 824, 828–29 (2d Cir. 1980), the Second Circuit Court of Appeals instructed a federal district court to supplement the record, explaining:

> Although the record does not convince us that Tompkins unequivocally waived his right to counsel, we are reluctant to reverse. At oral argument, the Government raised an important question concerning Tompkin's past experience in representing himself in criminal proceedings. Since that information may shed new light on Tompkin's behavior during the instant prosecution, we remand this case to the district court for the limited purpose of determining whether Tompkins unequivocally elected to waive his right to counsel, or simply attempted to manipulate the court to create a basis for reversal. We recognize that a direct criminal appeal is rarely remanded to the trial court for additional fact-finding. Nonetheless, where, as here, the record is silent on so crucial a question of fact as the intent to waive counsel, no other disposition is possible.

For reasons similar to those in *Tompkins,* we elect this procedure here to enable us to make a more informed judgment about Kimmel's waiver and, if sufficient information results, avoid the costs of a new trial.

This case is the first in which we have used a limited remand to supplement a record that does not show a knowing and intelligent waiver of counsel. In a number of similar cases, this court simply reversed the conviction and remanded for a new trial. *United States v. Crowhurst,* 596 F.2d 389, 391 (9th Cir. 1979); *United States v. Aponte,* 591 F.2d 1247, 1250 (9th Cir. 1978); *United States v. Gillings,* 568 F.2d 1307, 1310 (9th Cir.), *cert. denied,* 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 760 (1978); *United States v. Dujanovic,* 486 F.2d 182, 188 (9th Cir. 1973). These cases do not foreclose the use of a limited remand to supplement the record. Given that the limited remand is a prudential device which until recently has been used quite sparingly in this circuit, we are not surprised that the court has not had occasion previously to apply it in this context. We believe that the use of a limited remand to supplement the record is the best course of action in this case because the record suggests that additional relevant information is available.

### III. *Order*

We remand this case for the limited purpose of affording the district court the op-

portunity to supplement the record, using whatever procedure it deems most efficient, on whether Kimmel made a knowing and intelligent waiver. This court retains jurisdiction of the appeal.

REINHARDT, Circuit Judge, concurring in part and dissenting in part:

I concur in the opinion of the majority insofar as it holds (1) that Kimmel did not receive the benefit of his constitutional right to legal representation at his trial, (2) that under the circumstances of this case a knowing and intelligent waiver[1] of the right to counsel was required, and (3) that the record does not show that Kimmel made a knowing and intelligent waiver of that right prior to trial. I dissent from that portion of the opinion which orders a limited remand to allow the district court to supplement the record with "further details" of Kimmel's background, experience, and conduct.

In this case, the majority employs a limited remand procedure which lacks the support of precedent and reason, and which directly conflicts with the uniform and unquestioned practice in this circuit. When the record on appeal from a conviction in the district court fails to show that the defendant made a knowing and intelligent waiver of the right to counsel before proceeding to trial, our practice has been to reverse the conviction and order a new trial. The majority departs from our heretofore unquestioned procedure without discussing or distinguishing any of the cases in which it has been applied. Instead, in support of its use of an extraordinary and unprecedented limited remand procedure (which permits the record to be supplemented with facts not before the district court at the time the waiver was accepted), the majority relies on two habeas corpus cases from our circuit, and a case involving unique circumstances from the Second Circuit. None of those cases is applicable here.

If we are to break with precedent and blaze a new trial in the area of waiver of the right to counsel, I would much prefer that we address and resolve a question of continued uncertainty in this area of the law: whether the district court must *formally* advise the defendant of the risks of self-representation, the nature of the charges, and the consequences of conviction before accepting a waiver of the right to counsel, and in the absence of a *formal* warning, whether the conviction of a defendant who represents himself must be reversed. I believe that we should now state explicitly what we have strongly suggested in the past. First, when a defendant seeks to waive his right to counsel, the court must formally advise him on the record of the matters described above before accepting his waiver, and second, if the court fails to do so, the conviction will be reversed. Such a rule is both prudent and necessary to assure the protection of the fundamental constitutional right here involved. However, accepting as I must that such a *per se* rule is not yet the law in this circuit, I nevertheless disagree with the majority's characterization of the showing required to establish a knowing and intelligent waiver of the right to counsel—as well as with the limited remand procedure employed in this case.

*The Limited Remand*

After holding clearly and unequivocally that the record fails to show a knowing and intelligent waiver by Kimmel of his right to

---

1. Courts have been inconsistent in their description of a valid waiver of counsel. I have used the term "knowing and intelligent waiver." In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Court uses the terms "knowingly and intelligently" and "competently and intelligently" interchangeably. We have done the same, sometimes using one, sometimes the other, and sometimes both in the same opinion. *See United States v. Bird*, 621 F.2d 989 (9th Cir. 1980) ("knowingly and intelligently"); *United States v. Crowhurst*, 596 F.2d 389 (9th Cir. 1979) (knowingly, competently and intelligently); *United States v. Aponte*, 591 F.2d 1247 (9th Cir. 1978) ("knowingly and intelligently" and "competently and intelligently"); *United States v. Gillings*, 568 F.2d 1307 (9th Cir. 1978) ("knowing and intelligent"); *United States v. Dujanovic*, 486 F.2d 182 (9th Cir. 1973) ("competently and intelligently" and "competently, voluntarily, and intelligently").

counsel,[2] the majority remands the case to allow the district court to "supplement the record" with "details" or background information. As the majority admits, we have never previously remanded a case to the district court for this purpose. To the contrary, where as here, the *record* on appeal fails to show that the defendant made a knowing and intelligent waiver of counsel in the district court, the procedure uniformly followed in this circuit has been to reverse the conviction and remand for a new trial. *United States v. Crowhurst*, 596 F.2d 389, 391 (9th Cir. 1979); *United States v. Aponte*, 591 F.2d 1247, 1250 (9th Cir. 1978); *United States v. Gillings*, 568 F.2d 1307, 1310 (9th Cir.), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 760 (1978); *United States v. Dujanovic*, 486 F.2d 182, 188 (9th Cir. 1973). Rather than follow this well established precedent, the majority concluded that it is not bound by our prior decisions and orders *ex nihilo* a limited remand. In so doing, it allows the district court to sup-

plement the record with facts which were not on the record at the time the district court determined that the defendant made a knowing and intelligent waiver—facts which, as I will explain later, could not have established a valid waiver even if adduced before the district court prior to the time it accepted the waiver—facts which certainly cannot now be used *post facto* to support a waiver. The only reason offered by the majority for its failure to follow our well established precedent is that "the limited remand is a prudential device which until recently has been used quite sparingly in this circuit." [3]

The majority opinion relies on three cases that are clearly inapplicable here: *Rhinehart v. Gunn*, 661 F.2d 738 (9th Cir. 1981), *Davis v. Morris*, 657 F.2d 1104 (9th Cir. 1981), and *Tompkins v. United States*, 623 F.2d 824 (2d Cir. 1980). In *Davis*, the defendant petitioned for a writ of habeas corpus in federal court after being convicted in state court. The state court judge

---

2. The parties have pointed to only one instance in the record in which the court addressed the defendant regarding his decision to waive his right to counsel:

> MR. BRONSON (COURT APPOINTED ADVISOR TO THE DEFENDANT):
> Yes, Your Honor, and for the record, Gordon Bronson as his court appointed advisor in this matter.
> THE COURT: Mr. Kimmel, are you familiar with the role of an advisor?
> DEFENDANT: Yes, sir.
> THE COURT: You're representing yourself.
> DEFENDANT: Yes, sir. .
> THE COURT: And you understand Mr. Bronson is just there to be a resource?
> DEFENDANT: Uh-huh. Functioning with the assistance.
> THE COURT: Sort of like a walking law book.
> DEFENDANT: Yes, sir.

3. If the majority's unsupported statement that the limited remand procedure is a "prudential device which until recently has been used quite sparingly in this circuit" is intended to imply that the use of limited remands in this circuit is a recent phenomenon, or that there has been some recent change in our practice, the majority's statement is contrary to the facts. *See, e.g., Commissioner of Internal Revenue v. Kellogg*, 119 F.2d 115, 118 (9th Cir. 1941); *Lorber v. Vista Irrigation District*, 127 F.2d 628, 639 (9th Cir. 1942); *Willapoint Oysters, Inc. v. Ewing*, 174 F.2d 676, 680 (9th Cir. 1949); *Union

*Stock Farms v. Commissioner of Internal Revenue*, 265 F.2d 712, 728 (9th Cir. 1959). *See generally Ford Motor Co. v. NLRB*, 305 U.S. 364, 373, 59 S.Ct. 301, 307, 83 L.Ed.2d 221 (1938) ("It is familiar appellate practice to remand causes for further proceedings . . . where justice demands that course in order that some defect in the record may be supplied.").

However, if by a "prudential device which until recently has been used quite sparingly in this circuit" the majority is referring to an evidentiary remand under circumstances similar to those present in this case, the majority contradicts itself. The majority earlier states that "[t]his case is the first in which we have used a limited remand to supplement a record which does not show a knowing and intelligent waiver." The previous use of an evidentiary remand in this circuit for such a purpose has been sparing indeed—it has been non-existent, as the majority points out. In fact, the only case in which the majority suggests a limited remand procedure has been used under comparable circumstances is an isolated case from the Second Circuit which was explicitly based on exceptional circumstances. *Tompkins v. United States*, 623 F.2d 824 (2d Cir. 1980). In that case the court did not purport to adopt a "new prudential device," but rather, admitted that it was making an exception to its normal, well established procedure because of the unique circumstances presented. No such circumstances are present here.

had refused to allow the defendant to represent himself at a time when defendants in California had no such right, *i.e.*, before the Supreme Court's decision in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Because the defendant had no right to represent himself at the time of his trial, the trial judge had no reason to explain on the record the reasons for denying the defendant's request to proceed *pro se*. This court in *Davis* did not remand, as does the majority in this case, so that further "details or other evidence" regarding the defendant's "background, experience, or conduct" could be developed by the trial court to justify acceptance of a waiver "where the existing record does not ... adequately support a finding of an intelligent waiver." Rather, we remanded to allow the state trial judge to state on the record his reasons for denying the defendant's request to proceed *pro se*.

Similarly, in *Rhinehart v. Gunn*, 661 F.2d 738 (9th Cir. 1981), we employed a limited remand to allow a state court trial judge to state his reasons on the record for denying the defendant's request to proceed *pro se* when the denial was made before the Supreme Court's decision in *Farretta v. California*. In *Rhinehart*, we explained why a remand to allow a state trial judge to explain on the record the reasons for his decision is appropriate in the setting of a habeas corpus proceeding:

> we deem it appropriate to afford the state judge (who is still actively serving) the opportunity for a hearing *as to the reasons* that led him to deny Rhinehart's motion to represent himself. *See Davis v. Morris*, 657 F.2d 1104 (9th Cir. 1981). In part we are persuaded to take this course by the rationale of *Sumner v.*

*Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) and its warnings as to the maintenance of due regard for findings of fact by the state courts in habeas corpus cases, and the proper respect for the 'smooth functioning of the federal system' (449 U.S. 539, 101 S.Ct. at St 767). The course we follow here will also permit Rhinehart to exhaust his state remedies which he has not heretofore raised in the state court system ....

*Rhinehart v. Gunn*, 661 F.2d 738, 739–40 (9th Cir. 1981) (emphasis added).

We afford a certain deference to state court findings, as we did in *Davis* and *Rhinehart*, when those findings are attacked collaterally in federal court; obviously, the same notions of federalism are not implicated in this appeal. Moreover, in both *Davis* and *Rhinehart* the remand was designed to allow a state judge to explain his reasons for denying a request to proceed *pro se* when that denial was made before the defendants in those cases had a recognized right to represent themselves.[4] In neither case did we remand the matter to allow the trial court to supplement a record with details of the defendant's background, experience and conduct. Although the majority opinion cites *Rhinehart v. Gunn* and *Davis v. Morris* as support for the limited remand procedure it employs in this case, it subsequently admits that there is *no* precedent in this circuit for such a procedure. As the majority states, "[t]his case is the first in which we have used a limited remand to supplement a record that does not show a knowing and intelligent waiver."

Although in the Second Circuit case of *Tompkins v. United States*, 623 F.2d 824 (2d

---

4. In both *Davis* and *Rhinehart*, the defendants were *denied the right to self-representation* and were therefore represented by counsel at trial, while in this case Kimmel claims that he did not knowingly and intelligently waive his right to counsel. The majority fails to note this important distinction in its reliance on *Davis*. Courts indulge in every reasonable presumption against waiver of the right to counsel, *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), although the right to self-representation may be waived by the mere failure to assert it, *Brown v. Wainwright*, 665 F.2d 607 (5th Cir. 1982). It is therefore highly inappropriate to adopt a procedure from a context in which a right is waived unless asserted, and apply it to a right which is preserved unless waived. Rather than "indulge in every reasonable *presumption against waiver*," the majority adopts a procedure which, when applied in this context, can only operate to *infer a waiver* from the defendant's background, experience, and conduct.

Cir. 1980), relied on by the majority, the court did remand to allow for an evidentiary hearing on the question of waiver, the court stated that the facts in that case justified the use of an exceptional procedure. The opinion itself is notable in that it contains strongly worded but clearly inconsistent statements on the question of whether the defendant had deliberately attempted to create a confusing record on the issue of waiver. After stating "the facts before us simply do not reveal a deliberate plot to manipulate the court by alternatively requesting, then waiving counsel," the court went on to hold:

> We remand this case to the district court for the *limited purpose of determining whether Tompkins unequivocally elected to waive his right to counsel, or simply attempted to manipulate the court to create a basis for reversal.*

*Id.* at 829 (emphasis added). The Second Circuit also noted that the issue of the defendant's deliberate attempt to manipulate the record was first raised on appeal, that "a direct criminal appeal is rarely remanded to the trial court for additional fact finding" and that the remand in *Tompkins* was a limited exception to the rule it normally follows in such cases. The majority in this case states that its use of the limited remand procedure is based on "reasons similar to those in *Tompkins*," but the majority fails to state what those reasons are and the record reflects none. Thus, *Tompkins* offers no support for the majority's use of the limited remand procedure here.

There are sound reasons why we reverse and require a new trial, rather than remand for further evidence, when a waiver of the right to counsel is not established on the record. We need only discuss one here. In *United States v. Aponte,* 591 F.2d 1247, 1250 (9th Cir. 1978), we held that the determination of the validity of a waiver of counsel *must be made before* the defendant proceeds to trial and cannot be reconstructed *post facto.* In *Aponte,* the district court failed to conduct a proper inquiry before trial on two matters: whether the defendant knowingly and intelligently waived his right to counsel and whether he was compe-

tent to stand trial. The district court subsequently interrupted the trial to make those determinations after Aponte's advisory counsel had moved for a mistrial on the ground that the defendant was not competent to stand trial. The trial judge heard the testimony of three psychiatrists and ruled that the defendant was competent to waive counsel and to stand trial. The court allowed the trial to continue and Aponte was convicted.

We upheld the district court's finding that Aponte was competent to stand trial but reversed his conviction and remanded for a new trial because of the district court's failure to make a proper determination *before trial* as to whether Aponte made a knowing and intelligent waiver of counsel:

> [United States v.] Dujanovic, [486 F.2d 182,] teaches that the election [to waive counsel] must be tested *before trial* and that the record must show the basis for the court's finding that the right to counsel has been competently and intelligently waived.
>
> . . . .
>
> Since the trial judge may not allow a defendant to represent himself without first determining that there has been a waiver of the right to counsel, the decision on the defendant's competence to waive cannot be deferred.

*Id.* at 1250 (emphasis added).

We concluded that "Aponte's conviction must be reversed because the record does not disclose that he knowingly and intelligently waived his right to counsel before electing to represent himself." *Id.* at 1249. We explained that the purpose of requiring the determination to be made before trial was that if the district court delayed the determination until after the trial had commenced, there was a danger that the trial judge might impermissibly consider the defendant's post-waiver conduct in judging the validity of the waiver.

The district court in this case failed to determine before trial whether Kimmel made a knowing and intelligent waiver of

the right to counsel as required by *Aponte*. It merely accepted Kimmel's decision without making any of the inquiries which would have allowed it to decide whether the waiver was knowing and intelligent. The reasons which led us, in *Aponte*, to proscribe *post facto* inquiries are especially pertinent here. In this case the danger that the trial court will "impermissibly consider" the defendant's conduct after the purported waiver is obvious. Here, the majority allows a *post facto* examination not only after the trial has been completed, but after the court has heard post-trial motions brought by Kimmel acting *pro se*. Thus, the limited remand presents the danger that the district court may impermissibly consider factors not before the court at the time the waiver was accepted, the very danger that our holding in *Aponte* was intended to prevent.

In light of the uniform procedure of this court of reversing the conviction and remanding for a new trial when the record in a direct appeal does not demonstrate a valid waiver, I do not believe we should adopt a contrary procedure for Kimmel. His case does not differ materially from our previous cases involving waiver of the right to counsel; even if it did, an unreasoned departure from the rule we have uniformly followed would be unwarranted. If the majority feels compelled to treat Kimmel's appeal differently from all others, it should at the very least discuss and distinguish the cases in which we have reversed convictions and explain the reasons for its choosing not to follow them. In my view, the procedure we have uniformly utilized is a sound one and is binding upon us here.

For the reasons stated above, I would follow our well established precedent, reverse the conviction, and remand for a new trial.

*Proof of Waiver*

I also disagree with the majority concerning the showing which is required in order to establish that a waiver of counsel is "knowing and intelligent." As I have noted

previously, it is regrettably not yet the law in this circuit that the district court *must formally* advise the defendant of the risks of self-representation, the nature of the charges, and the consequences of conviction before the court can determine that the defendant's waiver of counsel is knowing and intelligent. However, we have repeatedly warned district courts that "the only practical means to protect against . . . a reversal" is to establish on the record that the defendant has expressly been made aware of the risks and consequences of a waiver of the right to counsel. *United States v. Aponte*, 591 F.2d 1247, 1250 (9th Cir. 1978); *see also United States v. Bird*, 621 F.2d 989 (9th Cir. 1980). In *United States v. Dujanovic*, 486 F.2d 182, 188 (9th Cir. 1973), we termed the use of that procedure "a minimal requirement" for the acceptance of a waiver of counsel by the district court.

Here, all the district court did was to accept the defendant's decision to dispense with counsel. It neither expressly advised him of the risks and consequences nor engaged in any colloquy concerning the defendant's knowledge or understanding thereof.[5] The majority states that in the absence of a specific waiver inquiry, the court may determine the validity of a waiver by considering the defendant's background, experience, and conduct. While these factors may be relevant in determining whether the defendant was capable of understanding a warning or other information given him by the court, they cannot establish that the defendant was expressly made aware of the risks and consequences of his waiver.

The majority erroneously relies on our opinion in *Cooley v. United States*, 501 F.2d 1249 (9th Cir. 1974), *cert. denied*, 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975), as support for its statement that *in the absence of a specific inquiry by the court into the defendant's awareness of the risks of self-representation*, the court "must consult the particular facts and circumstances sur-

---

**5.** The district court did determine that Kimmel had some understanding of the limited role of a legal advisor. That, however, falls far short of the required showing.

rounding that case, including the background, experience and conduct of the accused." In fact, *Cooley* stands for the wholly different proposition that *where the court has expressly made the defendant aware of the risks of self-representation*, the defendant's "background, experience, and conduct" may be considered in determining whether he understood and "appreciated" the court's warning.

A review of our decisions relating to the waiver of counsel issue, decisions which the majority simply dismisses without discussion, demonstrates that the defendant *must be expressly made aware* of the risks and consequences of his waiver of counsel in order to render a waiver of that right knowing and intelligent.[6] In *United States v. Dujanovic*, 486 F.2d 182 (9th Cir. 1973), the defendant refused the services of a public defender, who was nonetheless directed to sit at the defendant's side during the trial in order to offer advice when requested and to preserve the record for appeal. In holding that the record did not demonstrate that the defendant competently and intelligently waived his right to counsel, we stated:

> We cannot visualize a less minimal requirement than the district court shall not grant a request to waive counsel and proceed *pro se* without addressing the accused personally and determining on the record that the demand to waive counsel and proceed *pro se* is competently and intelligently made with the understanding of the nature of the charge and the penalties involved.

*Id.* at 186.

While in *Dujanovic* we said that the above statement was only admonitory, *see id.* at 188 n.2, we *held* that because the defendant was not expressly advised of the risks and consequences of his waiver of the right to counsel, the waiver was not made competently and intelligently. *Id.* at 188. We noted "that at no time during the waiver proceedings did the district judge personally advise the appellant of . . . the consequences of his choice of self-representation" and that the record in that case did not show that the defendant was advised by the trial court or "any other person" as to the nature of the charges and possible penalties. *Id.* Thus, our concern in *Dujanovic* was with whether the defendant was expressly advised of the risks of self-representation, the nature of the charges and the consequences of conviction.

The holding in *Dujanovic* was subsequently applied in *Cooley*, 501 F.2d at 1249. The defendant claimed that it was *per se* reversible error for the trial court not to personally address the defendant in court regarding the risks of self-representation. While we refused to adopt a *per se* rule, we found that the record demonstrated that the defendant was *expressly made aware by the court* of the risks and consequences of his decision to waive counsel:

> . . . On September 25, 1972 . . . he was given a copy of the information and advised of the consequences in the event he was convicted on the charges. Appellant stated that he understood what he was charged with and stated to the court that before he entered his plea he would like to have the matter presented to a grand jury because of the possible penalties involved . . . .
>
> . . . The court again advised appellant he was in an area where he needed professional competence. The court further observed that appellant and others similarly situated misunderstood, in his opinion, the legal issues involved.

*Id.* at 1250 & n.2.

Therefore, in *Cooley* we had no occasion to, and did not, say that an inquiry into the defendant's background, experience, and conduct was sufficient where the defendant was *not* expressly advised of the risks and consequences of proceeding without counsel.

---

6. The determination of whether the defendant was made aware of those risks and consequences may be made from the record as a whole. *United States v. Bird*, 621 F.2d 989 (9th Cir. 1980); *United States v. Aponte*, 591 F.2d 1247 (9th Cir. 1978); *Cooley v. United States*, 501 F.2d 1249 (9th Cir. 1974), *cert. denied*, 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975).

Subsequent decisions of the Supreme Court and this court have made it clear that the defendant *must expressly be made aware* of the risks and consequences of self-representation. After our decisions in *Dujanovic* and *Cooley*, the Supreme Court held in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) that a defendant has a constitutional right to represent himself in a state proceeding. In discussing whether the defendant in *Faretta* "had knowingly and intelligently" waived his right to counsel and demanded that he represent himself, the Court stated that the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with his eyes wide open." *Id.* at 2539. The trial judge in *Faretta* informed the defendant on the record that he would be expected to comply with the usual practices and procedures of the court, that the defendant was making a mistake in representing himself, and that a lawyer would be more familiar with the "ground rules" of trial practice. The Supreme Court concluded that under these circumstances the court should have allowed the defendant to represent himself.

In a series of *post-Faretta* decisions, we have emphasized that the critical issue in determining the validity of a waiver is whether the defendant *was expressly made aware of the risks of self-representation.* Normally, this requires a specific explanation by the trial judge, although failure to do so may not constitute reversible error if the record clearly demonstrates that the defendant was "fully informed" of those risks by some other person. *See United States v. Crowhurst*, 596 F.2d 389, 391 (9th Cir. 1979) (citing *Cooley v. United States*, 501 F.2d at 1252); *United States v. Aponte*, 591 F.2d 1247, 1250 (9th Cir. 1978). As we said in *Crowhurst*:

No decision of our court that has addressed the waiver of counsel issue has

held that the district court may dispense with the requirement that an accused individual must specifically be made aware of the charges and their possible penalties and sanctions. *See, e.g., United States v. Aponte, supra; United States v. Gillings*, 568 F.2d 1307 (9th Cir. 1978); *Cooley v. United States*, 501 F.2d 1249 (9th Cir. 1974); *Hodge v. United States*, 414 F.2d 1040 (9th Cir. 1969) (*en banc*). It may be that the district court's inadvertent omission in this respect would not constitute reversible error if the record clearly disclosed that Crowhurst had, in some manner, been fully informed as to the nature and possible penalties of the crimes charged in the indictment. *See United States v. Aponte, supra*, at 1249–50; *Cooley v. United States, supra*, at 1252. We have, however, studied and restudied the record before us, and we can find no evidence whatsoever that the required information was imparted.

*Id.* at 390–91.

In *Crowhurst* the court had specifically informed the defendant on the record of the disadvantages of proceeding *pro se*; however, such warning was found insufficient to support a valid waiver where the defendant was not also specifically informed of the charges and the possible penalties. *Crowhurst* emphasizes the point that a valid waiver of counsel cannot be made by a defendant who has not been specifically made aware of the risks and consequences of his choice to forego the assistance of counsel. To the same effect is our holding in *United States v. Bird*, 621 F.2d 989 (9th Cir. 1980), another post-*Faretta* case in which we reversed a conviction for failure to expressly advise the defendant of the risks and consequences of his waiver of counsel. *See also United States v. Aponte*, 591 F.2d 1247 (9th Cir. 1978) (stating that only practical means to avoid reversal is to make a record demonstrating that the defendant was made aware of the risks and consequences of waiver).[7]

---

7. In *United States v. Gillings*, 568 F.2d 1307 (9th Cir. 1978), we stated "[w]e apply the *Faretta* standard here." *Faretta* requires that the defendant "be made aware of the dangers and disadvantages of self-representation." 422 U.S. at 835, 95 S.Ct. at 2541. While in our *per curiam* opinion in *Gillings* we did not set forth specifically what the district judge told the defendant nor what inquiry the judge made of the

defendant, we said that the court approved the waiver "after an extended discussion in which the [defendant] played a major part and after having [him] consult [his] attorney one last time." 568 F.2d at 1309. I assume that the panel was satisfied from the record in *Gillings* that the defendant had in fact been made aware of the risks and consequences of his action.

In light of our post-*Faretta* holdings, it is not sufficient in the absence of a specific inquiry on the record merely to look at the defendant's "background, experience, and conduct" to determine if the defendant made a knowing and intelligent waiver. At the very least the record must show that the defendant was *expressly made aware of the risks of self-representation, the nature of the charges, and the consequences of conviction.*[8]

### Application to the Facts in This Case

We are considering here the waiver of a fundamental constitutional right. We are required to indulge in every reasonable presumption against its waiver. *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). It is therefore particularly surprising that the majority utilizes an unprecedented limited remand procedure and orders a general inquiry into the background, experience, and conduct of a defendant like Kimmel. The record shows that Kimmel is an individual who was suffering from both mental and physical disabilities. His primary defense was that Hawaii was not part of the United States. He claimed that he was a citizen of the sovereign nation of Hawaii and therefore was not subject to the laws of the United States. The record indicates that his use of drugs was part of a religion of his own making, that he believed that he was Special Ambassador of the Sovereign Creator of the Universe, that he refused to believe that the Shah of Iran was dead, and that he sought to subpoena Richard Nixon, Henry Kissinger, and various other high government officials in support of his defense. Further, although Kimmel is approximately thirty years old, the trial judge

noted that he looked to be a man of about eighty. Perhaps the best view of Kimmel may be gleaned from a reading of the colloquy between his legal advisor and the district judge which transpired at a post-conviction hearing. The material part is set forth below.[9]

There is simply no showing whatsoever on this record that Kimmel was made expressly aware by anyone of the risks and consequences of self-representation in this case. Nor would further inquiry into the defendant's general "background, experience, and conduct" illuminate this point. The failure of the district court to provide the necessary warning cannot be rectified by such an inquiry. The validity of Kimmel's waiver of counsel must be measured by his specific knowledge of the risks and consequences of self-representation, based on the specific information provided to him prior to the time he "waived" his constitutional rights; it may not be inferred from his general experience or education. Despite this rule, the majority remands the case to allow the district court to provide "further details" of Kimmel's background, experience, and conduct. Assuming that the district court does supplement the record with the details suggested, we will still be required to reverse the conviction and remand for a new trial.

The only concrete background information which the majority suggests may be useful in determining the validity of Kimmel's waiver is what he may have been told in an earlier state court proceeding in which he allegedly represented himself. Kimmel's record of involvement with the courts has been supplied to us by the district judge as part of the post-trial bail reduction proceed-

---

**8.** We must, of course, also be concerned with whether a defendant who is expressly made aware of "the risks and consequences" of his action is capable of comprehending and evaluating those facts.

**9.** THE COURT: It's just that Mr. Kimmel is in my opinion a rather strange gentleman.
MR. BRONSON: Yes. Thank you, Your Honor, for that ___
THE COURT: Yes.
MR. BRONSON: He's still trying ___
THE COURT: I tried the case and I know him very well.
MR. BRONSON: He's still—my last contact he was still trying to contact the Shah of Iran, and he does not believe the Shah is

dead. So, that's kind of where we are.
THE COURT: Yeah. Well, I think that we have to move rather carefully in this field because he does have problems in that area, but that doesn't mean he might not be entitled to a reduction of bail ...
I haven't seen him recently, but, of course, as you recall, it's shocking what he looks like at his age. How old is he?
MR. BRONSON: He's in his thirties or mid-thirties, Your Honor.
THE COURT: Yeah. He looks like he's ___
MR. BRONSON: ... in his sixties.
THE COURT: ___ in his eighties or something. Maybe his health has improved since he has been kept away from the drugs that were part of his religion, as I recall.

ings he conducted at our request. The record reflects that (a) Kimmel was charged in several state court prosecutions with growing or cultivating marijuana; (b) the most recent prosecution occurred five years prior to his trial in this case; (c) the most serious punishment imposed in any of the state court proceedings against Kimmel was probation; and (d) Kimmel was represented by counsel on each occasion.[10] Thus, from the record furnished us by the district court it appears that Kimmel did not previously represent himself and that there was therefore no occasion in the past for any court to advise him of the risks of self-representation.[11] Moreover, even had Kimmel been so advised in some manner in an earlier state court proceeding, that would be of little significance here. In the case before us, Kimmel was tried and convicted of the federal offenses of conspiring to distribute and distributing LSD and has been sentenced to ten years in prison. The risks of self-representation to Kimmel in the case before us were substantially greater than the risks present in any of the marijuana related state proceedings against Kimmel. Information given to Kimmel in the state proceedings, *if any*, cannot serve to establish that he was made aware of the nature of the federal charges against him, the consequences of a conviction on those charges, and the risks of self-representation in a case as serious as the one before us.

*Conclusion*

I stated earlier that the time has come for us to adopt *formally* a rule 1) requiring the district court to advise the defendant of the risks of self-representation, the nature of the charges, and the consequences of conviction before accepting the defendant's waiver of counsel, and 2) that the failure of the district court to do so requires reversal. As of now, and notwithstanding the majority's remand in this case, such is the *de facto* rule in this circuit.

Despite our previous warnings, district courts continue to accept waivers of counsel without expressly advising the defendant of the risks and consequences of their proposed action or otherwise attempting to determine on the record if the defendant has made a knowing and intelligent waiver of that right. I believe that a net savings of judicial resources would result if we were to adopt the course I recommend. Our formal adoption of such a rule would encourage district courts to do that which they are already in fact required to do, and would save this court from the task of searching the record below for that which cannot be found: evidence that the defendant was advised of the risks involved and made a knowing and intelligent waiver of the right to counsel.

Although we have not yet adopted the rule set forth above, I believe that under the current state of the law we are required to reverse and remand for a new trial, for the following reasons:

1) As the majority agrees, the record fails to establish a "knowing and intelligent" waiver of the right to counsel.

2) We have reversed rather than remanded for additional evidence in all similar cases. Precedent dictates the use of that procedure here.

3) We do not permit *post facto* determinations as to whether a waiver of the right to counsel was "knowing and intelligent."

4) Where the record fails to show that the defendant was expressly made aware of the risks and consequences of his waiver, background information regarding general knowledge or experience cannot establish that the waiver was effective.

Accordingly, I respectfully dissent from the majority's decision to order only a limited remand in this case. I believe that we are required to reverse the conviction and remand for a new trial.

---

**10.** There were no records available concerning one of the charges listed in Kimmel's prior record of offenses supplied by the district court—a 1973 marijuana charge. The record does not reflect, therefore, whether Kimmel was ever brought to trial on that charge or whether he was represented by counsel if he did stand trial.

**11.** Kimmel remarked to the district court in this case that he had represented himself in some proceeding three years earlier. The majority apparently infers from this statement that Kimmel had previously defended himself in a criminal trial. However, the record before this court does not reflect that Kimmel was involved in any criminal proceeding three years before his trial in federal court, nor that he represented himself in any prior criminal trial.

ON REMAND

PER CURIAM:

We remanded this case for the limited purpose of allowing the district court to supplement the record on whether Kimmel made a knowing and intelligent waiver of his right to be represented by counsel at trial. *United States v. Kimmel*, 672 F.2d 720 (9th Cir. 1982). The record as it then stood did not support a finding of an adequate waiver.

On remand, the district court conducted a hearing at which the Government volunteered to make an offer of proof showing a knowing and intelligent waiver. Subsequently, however, the Government decided not to pursue the matter. The court thus concluded the remand proceedings without adding any relevant evidence to the record.

We therefore reverse the convictions and remand for a new trial.