500 So.2d 873 (1986)
STATE of Louisiana
v.
Dallas DUPRE.
No. 86 KA 0557.
Court of Appeal of Louisiana, First Circuit.
December 23, 1986.
*875 Bryan Bush, Dist. Atty., Office of the Dist. Atty., Baton Rouge by Brenda Creswell, Asst. Dist. Atty., for plaintiff-appellee.
Boren, Holthaus, & Perez, by James E. Boren, Anthony M. Bertucci, Baton Rouge, for defendant-appellant.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
CRAIN, Judge.
Dallas Dupre was charged by grand jury indictment with one count of conspiracy to commit first degree murder and one count of attempted first degree murder, in violation of La.R.S. 14:26, 14:30 and 14:27, 14:30, respectively. Prior to trial, the state elected to proceed only with the attempted first degree murder charge. Following trial by jury, Dupre was convicted as charged. The trial court sentenced him to a forty year term of imprisonment at hard labor.

FACTS
The state sought to establish that Dallas Dupre attempted to murder a former deputy sheriff because the deputy had played a key role in a criminal investigation which led to Dupre's previous arrest and conviction for felony theft. Dupre's accomplice in the prior felony theft was Jerry Carmena. Carmena was also involved in this case as the undercover informant who reported to the police Dupre's desire to obtain a contract to murder the former deputy.
Jerry Carmena testified that in October of 1984, Dupre told him of his plans to have a "hit man" kill the former deputy. After that conversation, Carmena contacted the East Baton Rouge Sheriff's Office and informed it of Dupre's intention. Carmena also agreed to assist the police in their investigation. On October 23, 1984, and October 29, 1984, telephone conversations between Carmena and Dupre were tape recorded. Thereafter, Lt. Bud Connor of the sheriff's office enlisted the aid of Lloyd Grafton, a special agent for the United States Treasury Department's Bureau of Alcohol, Tobacco, and Firearms, to pose as a "hit man". A meeting was arranged by Carmena to introduce the undercover agent to Dupre. This meeting took place, under police surveillance, on October 31, 1984. Present were Dupre, Carmena, and Grafton, who had a recording device hidden in his boot.
Carmena and Grafton both testified that at the meeting Grafton and Dupre reached an agreement. Grafton represented that he would have the former deputy killed within a week. Defendant agreed to provide Grafton with an automatic firearm or two thousand dollars after receiving proof of the intended victim's death.
After the initial meeting between Dupre and Grafton, Lt. Connor contacted the intended victim who agreed to cooperate in the investigation. The former deputy was transported to a remote area where he was made up to appear mortally wounded and then photographed.
Grafton contacted defendant on November 6, 1984, when they met at a Baton Rouge hotel. At that meeting, Grafton showed Dupre a billfold belonging to the former deputy and various photographs of the former deputy with apparent bullet wounds through his head and neck. Since it appeared that Grafton had fulfilled his obligation, defendant had two thousand dollars placed in a bus station locker and left the locker key with the hotel desk clerk. Later that day, defendant was arrested at his home pursuant to an arrest warrant.

TRIAL COURT PROCEEDINGS
In bringing this appeal, defendant urges twenty-one assignments of error. We find merit in assignment of error number two, which is dispositive of the instant appeal.
*876 Defendant urges that the trial court erred in not granting his motion for new trial on the grounds that the trial court failed to determine that defendant knowingly and intelligently relinquished the benefits of representation by counsel. We agree.
The record reveals that defendant appeared in court without counsel for arraignment on the instant charge on January 7, 1985. When asked if he was going to be able to hire an attorney Dupre responded, "No, sir, and I don't want one." Thereafter, the following colloquy took place between defendant and the trial court:
THE COURT: Well, you see, these are very serious charges against you, Mr. Dupre, and you are going to need an attorney to represent you in this matter, at least to sit in with you and advise you on the procedures. I am going to go ahead and let you represent yourself, but it's going to be with a co-counsel of an attorney involved in this particular matter. Now, if you are able to hire an attorney, I'm going to require you to go ahead and hire an attorney to represent you on this matter, or at least sit in with you on the matter. If you are unable to hire one, I will consider appointing one for you.
MR. DUPRE: Sir, I don't have any money, and I just sold my home to pay my debts. I don't want one.
THE COURT: Well, for the time being, Mr. Dupre, I am going to go ahead and appoint the public defender to represent you in this matter as co-counsel. I am going to let you represent yourself in the matter, if it gets down to it, but I'm going to let the public defender sit in with you as co-counsel to advise you on legal aspects of your defense.

* * * * * *
So we are going to go ahead with the arraignment today and I am going to appoint the public defender as co-counsel for the time being, Mr. Dupre, to represent you in this matter. I will let you represent yourself and the public defender will be as co-counsel regarding this matter.
MR. DUPRE: Your Honor, that is  co-counsel, does that mean they will assist me?
THE COURT: Yes, sir. In other words, you are going to represent yourself, but it's going to be like you have two attorneys, one is going to be you and one is going to be Mr. Knight and his office, the public defender's office, so they can assist you in the preparation of your defense in this matter. Okay.
MR. DUPRE: Okay.
In February of 1985, Dan Taylor, a privately retained advisor, was substituted for the public defender's office as co-counsel.[1] Throughout pretrial hearings and at trial on the merits, Mr. Taylor assisted defendant in his pro se defense. In addition to counseling defendant on technical points, Mr. Taylor argued before the trial court and examined many witnesses. Taylor did not, however, assume all of the duties of defense counsel. For example, defendant presented the opening statement and examined several witnesses. In addition, defendant formulated and presented his major defense that he was actually engaged in a double sting operation when arrested for attempting to kill the former deputy.

THE RIGHT TO COUNSEL
For the reasons we set forth below, we have determined that Dupre did not "knowingly and intelligently" waive his right to counsel. Therefore, the first issue we must address is whether the appointment of co-counsel to assist Dupre satisfied his right to proper legal representation at trial.
The Sixth and Fourteenth Amendments of the United States Constitution guarantee that a person brought to trial must be afforded the right to assistance of *877 counsel before he can be validly convicted and punished by imprisonment. The Sixth Amendment further grants to an accused the right of self-representation. State v. Carpenter, 390 So.2d 1296 (La.1980). In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court raised to constitutional level the right of a state criminal defendant to represent himself. Because an accused managing his own defense "relinquishes... many of the traditional benefits associated with the right to counsel", he "must `knowingly and intelligently' forego those relinquished benefits" in order to represent himself. Faretta, 95 S.Ct. at 2541.
Although a defendant does not have a constitutional right to be both represented and representative, the district court has the discretion to appoint an attorney to assist a pro se defendant. See State v. Bodley, 394 So.2d 584 (La.1981); State v. Boettcher, 338 So.2d 1356 (La.1976). When the trial court allows this kind of arrangement the defendant acts as his only legal representative. The legal counsel that is appointed does not represent the defendant; he only advises him. Because the court appointed attorney is only acting as an advisor, the accused is abandoning his right to be represented by counsel. At the same time he is exercising his right to self-representation. Therefore, when an attorney is appointed as an advisor the accused must knowingly abandon his right to be represented by counsel.
In this case, although co-counsel was appointed as an advisor to Dupre, counsel spent a significant portion of the trial representing Dupre. Taylor argued motions, made objections, examined witnesses and assisted in closing arguments. The fact that Taylor partially represented Dupre at trial raises the initial issue of whether Dupre was thereby afforded all the benefits of legal representation and whether this representation abrogated the need for an adequate waiver of counsel.[2]
We hold that it did not. Even though he has an attorney partially representing him, when the accused assumes functions that are at the core of the lawyer's traditional role, as Dupre did, he will often undermine his own defense. Because he has a constitutional right to have his lawyer perform core functions, he must knowingly and intelligently waive that right. See United States v. Kimmel, 672 F.2d 720 (9th Cir.1982); Maynard v. Meachum, 545 F.2d 273 (1st Cir.1976); State v. Bell, 381 So.2d 393 (La.1980). This reasoning is "a logical extension of the well-established rule that a waiver is required despite the presence of a court-appointed advisor." Kimmel, 672 F.2d 720, 721, [citing United States v. Dujanovic, 486 F.2d 182 (9th Cir. 1973)].
Dupre, and not his co-counsel, performed many, if not most of those functions that are at the core of the lawyer's traditional role. An examination of the record reveals that the attorney served predominately as an advisor to help Dupre with procedural matters and proper courtroom conduct, and not as the controlling strategist in the case. Rather, Dupre formulated his own trial strategy and determined his theory of defense. He chose the witnesses to subpoena and to call to the stand, the questions to be asked, and he performed the opening and closing statements.
At the hearing on the motion for a new trial, Dupre testified that he was acting as primary counsel in the case; that he had planned on his own defense strategy and did not make co-counsel privy to it; and that this theory was all essentially "in his head." Understandably, Taylor had difficulty comprehending Dupre's theory that he had played along with hiring the hit man in some sort of "double sting" operation to catch and embarrass government officials *878 who were allegedly persecuting him.[3] Part of Dupre's "strategy", against Taylor's advice, was to call several local district judges to the stand and accuse them of being liars in hope of obtaining perjury convictions against them. Therefore, although Dupre had an attorney that represented him, he did not receive the benefits of a full legal representation.
This is not to say that Dupre was prohibited from abandoning his right to legal representation. Clearly he was  and it is just as clear that he was entitled to sink or swim on the wisdom of his choice. See Faretta. Nevertheless, this case presents the kind of problems attendant with the conflict between the accused's right to proper legal representation and the accused's right to defend himself. Although the trial court is certainly not prohibited from using this hybrid arrangement, there are inherent attendant difficulties. Initially, the attorney is appointed only to advise. As in this case, it appears inevitable that at least partial representation of the defendant, and conducting of the defense will occur unless controlled by the trial court. Then both the trial and appellate courts will be plagued with the problems that will result. They will have to grapple with issues of whether the accused was afforded adequate legal representation. Whether, as here, the accused adequately waived his rights when the accused continues to exercise core legal functions presents a problem. In the situation where the attorney takes over the defense, questions of violation of the accused's right to self-representation will result.
In general, if a defendant desires to represent himself, he should be required to waive counsel and proceed on his own. If the trial court wishes to appoint an advisor, a waiver of counsel is still required and problems will be avoided if the advisor is restricted to advising and not allowed to partially conduct the defense.

ADEQUACY OF THE WAIVER
Before an accused can choose the right to defend himself, he must make a knowing and intelligent waiver that shows he appreciates the possible consequences of mishandling the core functions that lawyers are more competent to perform. Kimmel, 672 F.2d at 721. "The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); State v. Harper, 381 So.2d 468 (La.1980).
Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that `he knows what he is doing and his choice is made with eyes open.'
Faretta v. California, 95 S.Ct. at 2541 [citing Adams v. United States, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)]. Thus, before a trial judge can allow a defendant to represent himself, he must determine whether defendant's waiver of counsel is intelligently and voluntarily made, and whether his assertion of his right to represent himself is clear and unequivocal. State v. Hegwood, 345 So.2d 1179 (La.1977). State v. Nevels, 457 So.2d 1254 (La.App. 1st Cir.1984); State v. Smith, 479 So.2d 1062 (La.App. 3rd Cir. 1985).
*879 It is clear that Faretta cannot, and does not, contemplate that the propriety of granting a defendant the right to represent himself shall be judged by what happens in the subsequent course of that representation. It is the record made in recognizing that right that is determinative. See United States v. Bailey, 675 F.2d 1292 (D.C.Cir.), cert. denied sub nom. Walker v. United States, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982). Furthermore, the state has the burden of establishing that the defendant knowingly and intelligently waived his constitutional right to the assistance of counsel. State v. Brooks, 452 So.2d 149 (La.1984).
In the instant case, the record does not indicate that defendant's waiver of the right to counsel was made intelligently and voluntarily so that his decision to represent himself was a clear and unequivocal choice. The record does not indicate that defendant had given any serious thought to self-representation or that he had explored the possibility of the grave risks inherent in such action. In fact, defendant may have been misled as to the role stand-by counsel would play in this case.
There should be some indication that the trial court tried to assess defendant's literacy, competency, understanding and volition before he accepted the waiver of counsel. State v. LaFleur, 391 So.2d 445 (La.1980). None of these indications are in the record nor is there any showing that the trial court adequately informed defendant of the dangers and disadvantages of representing himself. We can only conclude that the trial court did not investigate these factors and that the decision to allow Dupre to represent himself is not supported by the record.
Accordingly, defendant's conviction and sentence must be vacated, and this case remanded to the district court for a new trial.
REVERSED AND REMANDED[4].
NOTES
[1] Although defendant later hired Taylor to serve as private counsel in place of the court appointed attorney, the role Taylor assumed did not change from that which the original public defender played.
[2] It also raises an issue that defendant has assigned as error. That is, did the hybrid representation interfere with defendant's "Farretta" right to self-representation? See, e.g., McKaskle v. Wiggins, 465 U.S. 168, 173, 104 S.Ct. 944, 949, 79 L.Ed.2d 122 (1984). Because we are remanding on other grounds we do not reach this issue.
[3] This bizzare and illogical defense involved an alleged conspiracy between: Judges Saia, Hymel, Brown and Guidry of the Nineteenth Judicial District; attorneys Camile Gravel, Michael Baer and Richard Reed; several police officers, sheriff's deputies and state troopers; the intended victim; the police informants; the Internal Revenue Service, and various Treasury Department agents, to "get Dupre". The record discloses that Dupre has filed various "motions to prosecute" several of these persons, based on their allegedly having committed perjury at his trial.
[4] In this case, we find that the record does not adequately establish that the defendant herein made a knowing and intelligent election of self-representation. Faretta recognized the authority of a trial court to refuse to permit self-representation when, despite its efforts to explain the consequences of waiver, defendant is unable to reach the level of appreciation needed for a knowing and intelligent waiver. The process of explanation and inquiry of the trial court in making an adequate record would not only assist the trial court in making an accurate assessment of a defendant's waiver, but would provide the appellate court with an objective basis for review upon the almost inevitable challenge to the waiver by the defendant who proceeds pro se and is subsequently convicted. In addressing the problem of just what a court might do in ascertaining that a defendant's election is voluntary and intelligent, we do not wish to appear pedantic. Neither do we intend to establish any complex or rigid standards similar to those that now exist in the taking of a plea of guilty. Rather, for the benefit of the trial courts, we will set forth certain suggestions on how to protect the record when a defendant chooses to proceed pro se.

First, according to Faretta, it is necessary, that the defendant be made aware of the dangers and disadvantages of self-representation. Under this category, we suggest the defendant might be advised:
(1) That self-representation is almost always unwise and that he may conduct a defense ultimately to his own detriment. (See 95 S.Ct. at 2541).
(2) He is not entitled to and will receive no special indulgence by the court. He must follow all the technical rules of substantive law, criminal procedure, and evidence in the making of motions and objections, the presentation of evidence, voir dire, and argument. It should be made crystal clear that the same rules that govern an attorney will govern, control, and restrict the defendant  and that no special help from the judge will be forthcoming.
(3) The prosecution will be represented by an experienced professional counsel.
Second, we feel it would certainly be advisable to make some inquiry into the defendant's intellectual capacity to make this so-called "intelligent decision". The trial court should explore the primary factors that might have a bearing on defendant's ability to comprehend, including age, education, social background, mental health history, prior experience or familiarity with criminal trials, and prior consultation with counsel, in deciding to proceed pro se. In this category, inquiry might be made of:
(1) The defendant's education and familiarity with legal procedures. For example, can the defendant read and write? If not, how does the defendant propose to handle such items as written motions?
(2) If there is any question in the court's mind as to a defendant's mental capacity, it would appear obvious that a rather careful inquiry into that subject should be made.
(3) In order to show that the choice is an intelligent one, the defendant must be made aware of the alternative, i.e., the right to counsel.
(4) An inquiry realistically designed to reveal defendant's understanding would also seek to determine defendant's subjective reasons for proceeding pro se. This may reveal confusion that can be eliminated by the court.
(5) Perhaps some exploration into the nature of the proceedings, the possible outcome, possible defenses, and possible punishments might be in order. Such a discussion would facilitate a showing that "he knows what he is doing and his choice is made with eyes open." (95 S.Ct. at 2541).
(6) It should be made clear that, if there is misbehavior or trial disruption, the defendant's right of self-representation will be vacated.
Finally, the defendant should definitely be made aware that in spite of his best (or worst) efforts, he cannot afterwards claim inadequacy of representation. Pitiful though his efforts may be, he cannot thereafter complain that his self-representation was inadequate. As stated in Faretta (95 S.Ct. at 2541, n. 46), "Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of `effective assistance of counsel'."
The above are but suggestions. We do not attempt to establish any minimum requirements or suggest that failure to follow these guidelines would necessitate reversal in any particular situation. An adequate inquiry, however, must be made in order for the reviewing court to ascertain that the defendant has knowingly and intelligently elected to represent himself.