# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 17-1145


**STATE OF LOUISIANA**

**VERSUS**

**JOHN COLBY MANUEL**



\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. CR-2015-1500
HONORABLE JOEL GERARD DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## BILLY HOWARD EZELL
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and John E. Conery, Judges.


**CONVICTIONS AND SENTENCES AFFIRMED. CASE REMANDED FOR DISPOSITION OF COUNTS FOUR AND FIVE. MOTION TO WITHDRAW GRANTED.**

**Herbert Todd Nesom**
**District Attorney**
**Joe Green**
**Assistant District Attorney**
**Thirty-Third Judicial District Court**
**P. O. Box 839**
**Oberlin, LA 70655**
**(337) 639-2641**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**P.O.Box 2125**
**Lafayette, LA 70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**John Colby Manuel**

**John Colby Manuel**
**Pro-Se Defendant**
**Avoyelles Parish Jail**
**675 Government Street**
**Marksville, LA 71351**

**EZELL, Judge.**

On April 23, 2015, the State filed a bill of information charging Defendant, John Colby Manuel, with two counts of possession of a firearm by a convicted felon, violations of La.R.S. 14:95.1; two counts of possession of controlled dangerous substances, violations of La.R.S. 40:966 and La.R.S. 40:967; and first-offense possession of drug paraphernalia, a violation of La.R.S. 40:1023 and La.R.S. 40:1025. On February 15, 2017, a jury heard evidence and convicted Defendant of the two charges for possession of a firearm. The jury acquitted him of the third charge, which related to methamphetamine. The other two counts were misdemeanors; they were not tried with the three felony charges.

On May 23, 2017, the district court denied Defendant's motion for new trial, then sentenced him to ten years at hard labor for each conviction for possession of a firearm; said sentences to run concurrently.

Counsel has filed a brief seeking to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967). Counsel alleges there are no non-frivolous issues to raise on appeal. Our analysis indicates the motion to withdraw should be granted.

## FACTS

On February 22, 2015, Sergeant Steven Clement of the Oberlin Police Department responded to 911 calls regarding shots fired in a residential area. In the course of his investigation, Sergeant Clement spoke to Defendant, who was an area resident. Defendant denied shooting a gun recently but admitted to firing one earlier in the day. He revealed that he was wearing a holstered pistol and that he had another weapon in his truck. Upon Sergeant Clement's instruction, Defendant

put both pistols in the officer's possession. Sergeant Clement wrote him a citation for discharging a weapon within the city limits and returned the weapons.

Subsequently, Sergeant Clement determined that Defendant was a convicted felon, prepared a search warrant, and executed it. The search, conducted on February 26, led to the seizure of two firearms: one was in the house and the other was seized from Defendant's girlfriend who pulled up while the search was taking place; the pistol was in her purse.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find two errors patent and one possible error patent which will be discussed first.

First, there is a possible error patent concerning Defendant's waiver of his right to counsel. Recently, in *State v. Queen*, 17-599, 2018 WL 1044848, at *2-4, pp. 3-6 (La.App. 3 Cir. 1/ 4/18), __ So.3d __, __ (alterations in original), this court addressed this issue on error patent review:

> In conducting an error patent review of the waiver of the right to counsel, this court has examined the adequacy of the waiver. *State v. Montgomery*, 10-1151 (La.App. 3 Cir. 4/6/11) (unpublished opinion), *writ denied*, 11-1742 (La. 5/4/12), 88 So.3d 449, *cert denied*, __U.S. __, 134 S.Ct. 95 (2013). Thus, we will look beyond the court minutes to determine whether a waiver was required and, if necessary, whether the waiver was valid.
>
> In *State v. Dupre*, 500 So.2d 873, 876-78 (La.App. 1 Cir. 1986), *writ denied*, 505 So.2d 55 (La.1987) (footnote omitted), the first circuit discussed a waiver of right to counsel when standby counsel was also appointed:
>
>> The Sixth and Fourteenth Amendments of the United States Constitution guarantee that a person brought to trial must be afforded the right to assistance of counsel before he can be validly convicted and punished by imprisonment. The Sixth Amendment further grants to an accused the right of self-representation. *State v.*

*Carpenter*, 390 So.2d 1296 (La.1980). In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court raised to constitutional level the right of a state criminal defendant to represent himself. Because an accused managing his own defense "relinquishes . . . many of the traditional benefits associated with the right to counsel", he "must 'knowingly and intelligently' forego those relinquished benefits" in order to represent himself. *Faretta*, 95 S.Ct. at 2541.

Although a defendant does not have a constitutional right to be both represented and representative, the district court has the discretion to appoint an attorney to assist a pro se defendant. *See State v. Bodley*, 394 So.2d 584 (La.1981); *State v. Boettcher*, 338 So.2d 1356 (La.1976). When the trial court allows this kind of arrangement the defendant acts as his only legal representative. The legal counsel that is appointed does not represent the defendant; he only advises him. Because the court appointed attorney is only acting as an advisor, the accused is abandoning his right to be represented by counsel. At the same time he is exercising his right to self-representation. Therefore, when an attorney is appointed as an advisor the accused must knowingly abandon his right to be represented by counsel.

In this case, although co-counsel was appointed as an advisor to Dupre, counsel spent a significant portion of the trial representing Dupre. Taylor argued motions, made objections, examined witnesses and assisted in closing arguments. The fact that Taylor partially represented Dupre at trial raises the initial issue of whether Dupre was thereby afforded all the benefits of legal representation and whether this representation abrogated the need for an adequate waiver of counsel.

We hold that it did not. Even though he has an attorney partially representing him, when the accused assumes functions that are at the core of the lawyer's traditional role, as Dupre did, he will often undermine his own defense. Because he has a constitutional right to have his lawyer perform core functions, he must knowingly and intelligently waive that right. *See United States v. Kimmel*, 672 F.2d 720 (9th Cir.1982); *Maynard v. Meachum*, 545 F.2d 273 (1st Cir.1976); *State v. Bell*, 381 So.2d 393 (La.1980). This reasoning is "a logical extension of the well-established rule that a waiver is

required despite the presence of a court-appointed advisor." *Kimmel*, 672 F.2d 720, 721, [citing *United States v. Dujanovic*, 486 F.2d 182 (9th Cir.1973) ].

. . . .

In general, if a defendant desires to represent himself, he should be required to waive counsel and proceed on his own. If the trial court wishes to appoint an advisor, a waiver of counsel is still required and problems will be avoided if the advisor is restricted to advising and not allowed to partially conduct the defense.

In *State v. Poche*, 05-1042, pp. 8-9 (La.App. 3 Cir. 3/1/06), 924 So.2d 1225, 1231-32, this court explained, in pertinent part:

In *State v. Hayes*, 95-1170, pp. 4-5 (La.App. 3 Cir. 3/6/96), 670 So.2d 683, 685-86, this court stated:

Before being allowed to represent himself, a criminal defendant must knowingly and intelligently waive his constitutional right to counsel. *State v. Mitchell*, 580 So.2d 1006 (La.App. 3 Cir.1991), *writ denied*, 613 So.2d 969 (La.1993).

A criminal defendant is guaranteed the right to counsel by both the state and federal constitutions. U.S. Const. amend. VI; La. Const. art. I, § 13. Absent a knowing and voluntary waiver of the right to counsel, no person may be imprisoned unless represented by counsel at trial. *State v. Smith*, 479 So.2d 1062 (La.App. 3 Cir.1985), citing *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

Before a defendant may waive his right to counsel, the trial court must determine whether the defendant's waiver of counsel is intelligently and voluntarily made, and whether his assertion of his right to represent himself is clear and unequivocal. *State v. Hegwood*, 345 So.2d 1179 (La.1977). The determination of whether there has been an intelligent waiver of the right to counsel depends upon the

4

facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *State v. Harper*, 381 So.2d 468 (La.1980). Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether a defendant has validly waived his right to counsel. *State v. Carpenter*, 390 So.2d 1296 (La.1980). However, the record must establish that the accused knew what he was doing and that his choice was made "with eyes open." *Id.* at 1298, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

The Third Circuit Court of Appeal has repeatedly required the trial court meet the following requirements in determining whether a defendant has validly waived his right to counsel: first, determine a defendant's literacy, competency, understanding and volition, i.e. [,] was defendant's waiver of counsel made voluntarily and intelligently; and second, warn the defendant of the dangers and disadvantages of self-representation, so that the record establishes that the defendant knew what he was doing. *Mitchell*, 580 So.2d 1006; *Smith*, 479 So.2d 1062; *State v. Adams*, 526 So.2d 867 (La.App. 3 Cir.1988); *State v. Sepulvado*, 549 So.2d 928 (La.App. 3 Cir.1989); and *State v. Bourgeois*, 541 So.2d 926 (La.App. 3 Cir.1989), *writ denied*, 572 So.2d 85 (La.1991).

The correctness of granting a defendant the right to represent himself is judged by the record made in recognizing his right to do so, not by what happens in the course of his self-representation. *State v. Dupre*, 500 So.2d 873 (La.App. 1 Cir.1986), *writ denied*, 505 So.2d 55 (La.1987).

In *Queen*, the questioning of the defendant prior to the waiver of his right to counsel established the following: he was forty-two with one year of college

5

education in paralegal studies; he had been involved in prior criminal proceedings in Texas, and in one proceeding, he had represented himself up to the point of jury selection; he had been successful in having a theft charge reduced from a felony to a misdemeanor; he represented himself in a civil matter; he was familiar with the laws and penalty concerning the charge he faced; he had reviewed the evidence provided by the State as a result of discovery motions filed by his attorney; and he had written letters to the court concerning a writ of habeas corpus and requesting copies of his charging instrument.

The court allowed his request in part by allowing him to represent himself with co-counsel appointed to assist. This court found that although the trial court did not specifically advise the defendant of the dangers and disadvantages of self-representation, considering the record as a whole as in *Poche*, 924 So.2d 1225, this court found that the right to counsel was adequately waived during pre-trial proceedings considering the trial court was aware that the defendant was "literate, competent, and understood the charges against him and the judicial process." *Queen*, ___ So.3d at ___ (quoting *Poche*, 924 So.2d at 1233). Additionally, this court noted that the defendant was assisted by co-counsel at numerous proceedings and it discussed those proceedings which occurred after the August 20, 2009 waiver before reaching the conclusion that the defendant was aware of the judicial process and that his choice to represent himself was part of a strategy. Thus, this court concluded the waiver was adequate.

In *Poche*, the issue of self-representation was raised by the defendant on appeal. This court found that the trial court's interview of the defendant regarding self-representation did not meet the *Hayes* requirements necessary to determine whether the defendant's waiver was valid because the court did not make an

6

express determination regarding his literacy, competency, or understanding; it did not determine whether his waiver was intelligently made; and it failed to inform him of the dangers and disadvantages of self-representation. However, based on the record as a whole, this court found the trial court's determination was not error. It noted that the defendant had filed numerous pre-trial pro se briefs with the trial court, some of which he argued himself at hearings on the motions. The defendant was also made aware of the elements of each crime at arraignment, which was prior to his request to represent himself. Thus, this court found that at the time of the waiver, the trial court was aware that the defendant was literate, competent, and understood the charges against him and the judicial process. Thus, to satisfy the first step of the *Hayes* test, all that was left was for the trial court to determine the defendant's volition, which it had done. This court had to only determine whether the defendant was made aware of the dangers and disadvantages of self-representation. In concluding that defendant was aware of the dangers and disadvantages of self-representation, this court stated:

> In *State v. Norman*, 99-600 (La.App. 5 Cir. 2/16/00), 756 So.2d 525, *writ denied*, 00-971 (La.3/23/01), 787 So.2d 1007, the fifth circuit concluded that the record should be examined for indications that a defendant was aware of the dangers and disadvantages of self-representation, noting that prior extensive experience with the judicial process and the criminal justice system, such as experience obtained through prior felony convictions, indicates that a defendant is aware of the dangers and disadvantages of self-representation.
>
> At the sentencing hearing, the trial court discussed Defendant's prior extensive experience with the judicial process. Defendant is a fifth felony offender with a record dating back to December 27, 1983. In addition to the felonies, he has been convicted of six misdemeanor charges and has pled guilty to reduced charges on at least one occasion as a result of a plea bargain. Based on his prior extensive experience with the criminal justice system, we find that Defendant was aware of the dangers and disadvantages of self-representation. This assignment of error is without merit.

*Poche*, 924 So.2d at 1233-34.

In the present case, counsel represented Defendant throughout his trial, but at his April 28, 2017 hearing on post-trial motions, Defendant indicated he wished to waive his right to counsel. No examination was conducted regarding the waiver. Defendant subsequently represented himself at the May 23, 2017 hearing on his motion for new trial and sentencing. These two matters were combined in a single proceeding. Because sentencing is a critical stage of the proceedings, it is unnecessary to determine whether a hearing on a pro se motion for new trial is such a proceeding. *State v. Carpenter*, 390 So.2d 1296 (La.1980). At the start of the hearing, defense counsel informed the court that his client wished to represent himself, but she would be present "to make sure he (Defendant) underst[ood] his constitutional rights and on that motion he will be making the argument." The following colloquy ensued between the judge and Defendant:

THE COURT:

What grade in school did you finish?

MR. MANUEL:

GED.

THE COURT:

GED, you want to argue your motion for new trial rather than have Ms. Guillory argue your motion?

MR. MANUEL:

Well, I had re-filed it this morning to put - - all the grounds on it.

THE COURT:

You re-filed it when?

8

MR. MANUEL:

It probably went out Friday so if I can get it postponed - -

THE COURT:

-- no, sir.  Listen, evidently what you're going, you file repetitive motions for new trial.  I have already denied your motion for new trial, and we're not going to keep on putting this off.  We'll argue, you can argue your motion today if that's what you choose to do. . . . You can argue all the grounds that you have in the present motion or in the one that you filed.  So you can go ahead at this time.

MR. MANUEL:

And I just want to let the court know I'm not trying to file repetitive motions and I'm not trying to postpone anything, I'm just - - I'm without law help.  No law books or anything I'm just trying to do it the right (inaudible), that's all.

Defendant proceeded to argue the claims, and the trial court denied his motion for new trial filed April 17, Defendant's motion for new trial that had been filed or mailed to the court, and any other pending motions.[1]  Defendant waived the sentencing three-day delay required by La.Code Crim.P. art. 873 and was sentenced to the minimum sentence of ten years at hard labor without benefit of probation, parole, or suspension of sentence on each count.

At a subsequent hearing regarding Defendant's post-conviction bail held June 29, 2017, Defendant indicated that he wished to waive his right to counsel, and a more in-depth examination was conducted by the same judge[2]:

---

[1]A pro se motion for new trial was filed in the trial court on May 25, 2017, after the May 23, 2017 hearing.  At the bottom of this motion, the court noted that this supplement to the motion for new trial was denied at the May 23, 2017 hearing.

[2]The cover of the June 29, 2017 transcript bears both the trial court docket number for this case (CR-2015-1500) as well as the docket number for another case (CR-2017-1142.) Thus, it appears the references regarding pretrial matters concerned the pending proceedings in 17-1142.)

THE COURT:

Okay, sir let's go ahead and discuss that first. Okay? You do have a 6th amendment right to represent yourself, okay? But I need to have this discussion with you on the record because I feel it's very important and necessary and you have the right to represent yourself but you also have the right to counsel. And the reason that you have the right to counsel is because representing yourself in a criminal matter, or anyone representing anyone in a criminal matter is not a very easy thing to do. There are certain pitfalls and certain difficulties that a person encounters during pre-trial matters and also for trial matters. And so the court wants to make sure that you first of all are competent to understand that and that you understand that you're waiving certain rights. Having said that you also have the right as I said under the 6th amendment to represent yourself. They have a saying and I guess most of the time I agree with it. A person who represents themselves has a fool for a client, because you never know, somebody said I forget exactly who said it but I think it's a very wise thing because you know when you're at trial you're going to be trying to listen to what the attorney says and try to figure out your strategy and you're going to be missing things and so at the very least the court will appoint standby counsel to represent you. Do you understand all the different stages of trial?

MR. MANUEL:

I go over it, I read it every day and every night.

THE COURT:

Okay, you understand about the difficulties in giving an opening statement and not incriminating yourself?

MR. MANUEL:

I think I can do better than I was done. I think that I was mis-represented in my other trial and I believe that I can do much better.

THE COURT:

Okay, do you understand about having to cross-examine witnesses and just ask them questions and whatever their answers are you have to live with them?

10

MR. MANUEL:

And I also heard you say one time that I don't have to even put up an - -

THE COURT:

Well, sure.

MR. MANUEL:

There you go.

THE COURT:

Okay, you understand that you have the right to subpoena witnesses and require that they come testify under oath?

MR. MANUEL:

I understand everything Your Honor.

THE COURT:

Well - -

MR. MANUEL:

-- and I wish to waive my right to counsel.

THE COURT:

Well, we're going to go ahead and we're going to get to that but I'm not going let you just do it. I'm going to make sure that you understand all these things and that there are certain difficulties, so do you understand not only can you subpoena witnesses you can also subpoena evidence to court on the date scheduled for your trial?

MR. MANUEL:

Yes, sir.

THE COURT:

Okay, do you understand that you have the right to a judge trial but you also have the right to a jury trial?

MR. MANUEL:

Yes, sir.

THE COURT:

And do you understand about jury selection and challenges for cause and peremptory challenges, you understand all of that?

MR. MANUEL:

Yes, sir.

THE COURT:

All right, do you understand what I said not only about cross examining the state[']s witnesses but do you understand that you would be required to direct any witnesses that you might call?

MR. MANUEL:

Yes, sir.

THE COURT:

All right. You think you know all about the Code of Evidence and what evidence is admissible and what evidence is not admissible and what evidence might be hearsay and things such as that?

MR. MANUEL:

Yes, sir.

THE COURT:

All right. I'm just going to tell you one more time do you understand the dangers of representing yourself? And the only reason I say this and you're laughing about it, it's a very serious matter. I take this matter extremely seriously and you know I'll be honest with you, I've been doing this over twenty years and I've never seen a person represent themselves - -

MR. MANUEL:

-- and succeed?

12

THE COURT:

No, not only did they not succeed but I've never seen anybody even do a pretty good job so that's the only reason why I'm taking this time to tell you, okay? How far in school did you go?

MR. MANUEL:

GED.

THE COURT:

Okay, you're able to read and write?

MR. MANUEL:

Yes, sir.

THE COURT:

You understand the English language?

MR. MANUEL:

Yes, sir.

THE COURT:

You got any mental or physical disabilities, handicaps, afflictions or diseases that might affect your ability to represent yourself?

MR. MANUEL:

Not so far.

THE COURT:

Okay, well do you understand everything that I've said so far?

MR. MANUEL:

Yeah, I just got one question.

13

THE COURT:

Yes, sir.

MR. MANUEL:

Would I be able to hire an attorney after I waive my right to counsel?

THE COURT:

Yes, sir.

MR. MANUEL:

Okay.

THE COURT:

You can always change your mind and - - but you feel that you have the mental capacity and understanding to competently represent yourself?

MR. MANUEL:

Yes, sir.

THE COURT:

Okay, well the court finds that Mr. Manuel is competent to waive his right to counsel and therefore the court will allow him to waive his right to counsel to represent himself in these matters but however the case law is pretty clear to me that what the court is required to do is appoint standby counsel because sometimes what happens in trials is people realize they are over their head and the judge can't stop the trial and say okay, well let's start over again and have an attorney. So for ever how long you represent yourself that will be water under the bridge as they say and if you ever want to invoke the right to counsel then the case would go from that point forward so the court will appoint Ms. Guillory as standby counsel in your matters, okay.

The court then discussed Defendant's appeal, and his request for a bond reduction was taken up. While addressing that issue, Defendant noted for the court that he had "been coming to court here for [sic] I think since I was born and I might have one or two failure to appears [sic] due to I was coming to court two or

14

three times a month." In addressing Defendant's bond reduction request in another docket number, the prosecutor noted that Defendant was a third or fourth felony offender. This is substantiated by Defendant's rapsheet introduced at trial as State Exhibit #5.

At the time of the waiver of Defendant's right to counsel, he was aware of the charges against him. At his seventy-two-hour hearing, Defendant told the court he was charged with possession of a firearm, which the court later clarified to be possession of a firearm by a convicted felon. Additionally, Defendant informed the court that he had obtained his GED, and he had clearly expressed to the court his desire to represent himself. Thus, we find the trial court was aware that Defendant was literate, competent, and understood the charges against him. Although Defendant was not made aware of the dangers and disadvantages of self-representation at the time of the waiver of his right to counsel, he clearly had a prior felony conviction which formed the basis of his current conviction. He had been present during the current trial, and the prosecutor's comment referenced above indicated Defendant had multiple prior felonies. Further, when Defendant was later fully advised of the dangers and disadvantages of self-representation at the June 29, 2017 hearing, there was nothing to indicate that his responses would have been any different if asked at his May 23, 2017 hearing. Considering the record as a whole, as this court did in *Poche* and *Queen*, we find Defendant adequately waived his right to counsel during post-trial proceedings.

Next, there is a misjoinder of offenses in the bill of information. The bill of information charged the Defendant with three felonies triable by jury and two misdemeanors triable by a judge without a jury. La.Code Crim.P. art. 779. Therefore, counts four and five were improperly joined with counts one through

15

three. However, the Defendant did not file a motion to quash the bill of information on the basis of misjoinder of offenses, as required by statute. La.Code Crim.P. art. 495. Thus, review of this error is waived.

Next, since counts four and five are misdemeanors, the proper mode of appellate review for these offenses is an application for writ of review rather than an appeal. La.Code Crim.P. art. 912.1. In *State v. Turner*, 04-1250 (La.App. 3 Cir. 3/2/05), 896 So.2d 286, *writ denied*, 05-871 (La. 12/12/05), 917 So.2d 1084, this court severed a misdemeanor conviction for possession of marijuana from the defendant's appeal of two felony convictions and instructed the defendant to file a writ of review regarding the possession of marijuana conviction, if so desired. This court noted that the defendant did not make any specific arguments regarding the misdemeanor conviction.

As in *Turner*, Defendant has not raised any assignment of error regarding these misdemeanors. Therefore, as was done by this court in *Turner*, this court severs the misdemeanors from the appeal. However, unlike *Turner*, the record does not establish a disposition of the misdemeanor charges. Information from the district court clerk of court's office indicates the record does not reflect a disposition of counts four and five.

Louisiana Code of Criminal Procedure Article 819 provides: "If there is more than one count in an indictment, the jury must find a verdict as to each count, unless it cannot agree on a verdict as to a count." Louisiana Code of Criminal Procedure Article 820 applies the provisions of the Chapter regarding effects of verdicts to apply to cases tried without a jury as well. Therefore, we sever the misdemeanors from the appeal and remand the charges to the trial court for a

16

proper disposition of counts four and five. *State v. Hypolite*, 04-1658 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381.

*ANDERS* **ANALYSIS**

Pursuant to *Anders*, 386 U.S. 738, Defendant's appellate counsel filed a brief stating that he made a conscientious and thorough review of the trial court record and could find no errors on appeal that would support reversal of Defendant's convictions and sentences. Thus, counsel seeks to withdraw. Defendant has filed a pro se brief assigning nine errors. We will discuss the *Anders* analysis first, as it involves a review of the trial transcript.

In *State v. Benjamin*, 573 So.2d 528, 531 (La.App. 4 Cir. 1990), the fourth circuit explained the *Anders* analysis:

> When appointed counsel has filed a brief indicating that no non-frivolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, *Anders* requires that counsel move to withdraw. This motion will not be acted on until this court performs a thorough independent review of the record after providing the appellant an opportunity to file a brief in his or her own behalf. This court's review of the record will consist of (1) a review of the bill of information or indictment to insure the defendant was properly charged; (2) a review of all minute entries to insure the defendant was present at all crucial stages of the proceedings, the jury composition and verdict were correct and the sentence is legal; (3) a review of all pleadings in the record; (4) a review of the jury sheets; and (5) a review of all transcripts to determine if any ruling provides an arguable basis for appeal. Under C.Cr.P. art. 914.1(D) this Court will order that the appeal record be supplemented with pleadings, minute entries and transcripts when the record filed in this Court is not sufficient to perform this review.

Appellate counsel's *Anders* brief must review the record and provide "a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place." *State v. Mouton*, 95-981, p. 2 (La. 4/28/95), 653 So.2d 1176, 1177. Counsel observes there were no challenges for cause by the defense during voir dire and no contemporaneous

17

objections were made during trial. Our review of the record indicates the assertion regarding voir dire is correct; further, it appears the defense did not raise any formal objections during testimony.  To the extent that Defendant's trial counsel raised concerns about any of the evidence that was introduced, those concerns were resolved by actions the prosecutor took to accommodate such concerns, i.e., by redacting potentially prejudicial information.

In going through the record, Defense counsel indicates that the evidence in the record was sufficient to support the conviction.   The evidence showed that Defendant had a prior conviction for second degree battery. His former probation officer testified that the sentence for that conviction terminated in April of 2009; thus, under La.R.S. 14:95.1 as it existed at the time, he could not have possessed any firearms legally until 2019.

As for the actual possession of firearms at issue, Sergeant Clement's testimony about his initial encounter with Defendant showed that Defendant had physical possession of two firearms at that time.  Further, although Sergeant Clement misidentified the calibers of the two weapons, he indicated the weapons recovered pursuant to the search warrant were the same two guns he saw during his initial contact with Defendant. Defendant's girlfriend, Jolene McGee, testified that she recognized one of the weapons as one that had belonged to Defendant's father and that Defendant had physically possessed; at some point they had pawned it but later redeemed it.  She did not recognize the smaller pistol in evidence, although she and Defendant had obtained a small-caliber gun from a pawn shop.   The weapons were registered in her name; Defendant was aware that he could not legally possess firearms.

Ms. McGee remembered handling only one weapon during the initial encounter with Sergeant Clement and disputed some other points in the officer's account of events but testified that Defendant had used both the .38 caliber pistol and a .25 caliber pistol at some point. Counsel suggests, and we agree, that after hearing testimony from Sergeants Clement and Ms. McGee, the jury's decision to convict Defendant of both counts of possession of a firearm by a convicted felon was rational. Although there were some conflicts or discrepancies between the testimonies of the two main witnesses, it is settled that a jury may accept or reject any testimony in whole or in part.

Regarding Defendant's pretrial motions, counsel notes that both the motion to suppress and the motion to quash were based upon the misidentification of the calibers by Sergeant Clement. At the initial encounter with Defendant, the officer though he saw a .22 caliber pistol and .40 caliber pistol, but police later seized a .25 and a .38. As counsel notes, this minor discrepancy did not support the granting of either motion. The misidentification of the calibers is a matter of weight, and its assessment was soundly within the discretion of the district court. Our survey of the jurisprudence indicates counsel's assertions are correct. *State v. Lee*, 05-2098 (La. 1/16/08), 976 So.2d 109, *cert denied*, 555 U.S. 824, 129 S.Ct. 143 (2008); *State v. Love*, 00-3347 (La. 5/23/03), 847 So.2d 1198, *State v. Eaglin*, 08-979 (La.App. 3 Cir. 3/4/09), 4 So.3d 991, *writ denied*, 09-794 (La. 12/18/09), 23 So.3d 933.

Also, counsel observes the district court did not abuse its discretion in determining that Defendant's statements to Sergeant Clement during their initial encounter were made in a non-custodial setting and thus not subject to suppression. We find this observation is correct. *State v. Blackson*, 38, 044 (La.App. 2 Cir.

19

1/28/04), 865 So.2d 272. Counsel also notes Defendant's ten-year sentences were the minimum terms available pursuant to La.R.S. 14:95.1 as it existed at the time, and they are to run concurrently.

## PRO SE ASSIGNMENTS OF ERROR

Regarding the pro se assignments of error, we observe that the pro se brief contains little to no argument on the issues he lists. The first assignment states there is a discrepancy in the date of the police report; in the second assignment, he complains that there is a discrepancy between the Witness Statement and the Detailed Call Report. We observe that these sorts of issues go to credibility or general weight. As noted earlier, the assessment of the weight of evidence is within the jury's province. Regarding the offense report, Sergeant Clement testified that he wrote it soon after the initial incident on February 22, 2015. However, the document itself shows that it was filled out on February 26. It is not clear what effect the difference in the dates would allegedly have had on the case. Discrepancies regarding the Witness Statement were discussed before the jury during cross-examination, re-direct, and the examination of Sergeant Clement.

His third, fourth, and fifth pro se assignments appear to focus on the initial misidentification of the calibers of the weapons by Sergeant Clement. Defendant seems to argue that the weapons seized differed from those that Sergeant Clement saw him possessing during their initial encounter. As discussed earlier, the misidentification of the calibers was put before the jury at trial. Also, even if two entirely different weapons had been found during the search of Defendant's home, as opposed to the weapons seen during the initial encounter, the weapons seized from the home could have formed the basis of criminal charges. The offense date

20

listed on the bill of information would go to the issue of notice, but Defendant does not contend he did not know the nature of the charges.

In his sixth assignment of error, he notes that Sergeant Clement testified that he has known Defendant since fourth or fifth grade; but he provides no evidence that any prior association between them was prejudicial. In his seventh assignment of error, he claims that time discrepancies in the Detailed Call Report are "proof of Profiling by Officer." However, Defendant does not explain how an alleged nine-minute discrepancy in the call report demonstrates that Sergeant Clement profiled him or had any personal ill will toward him.

In his eighth assignment of error, he again addresses the credibility of Sergeant Clement. Defendant claims it is not clear from the record whether Sergeant Clement ever unholstered the pistols or ran the registration numbers. This is a minor point that goes to weight.

In his ninth and final assignment of error, Defendant complains that his motion to suppress was heard by a different judge than the one who conducted the trial. He does not explain how this prejudiced his case.

The pro se assignments of error lack merit.

In light of the foregoing discussion, we find that appellate counsel has demonstrated that he has performed a thorough review of the record and has found no non-frivolous issues. Accordingly, the convictions and sentences are affirmed, counsel's motion to withdraw is granted, and the case is remanded for disposition of counts four and five.

**CONVICTIONS AND SENTENCES AFFIRMED. CASE REMANDED FOR DISPOSITION OF COUNTS FOUR AND FIVE. MOTION TO WITHDRAW GRANTED.**

21